We'll hear argument next in Case 18-6210, Mitchell v. Wisconsin. Mr. Hinkle. Mr. Chief Justice, and may it please the Court, State advances a bold and novel proposition here that it can excuse itself from the Fourth Amendment warrant requirement simply by enacting a statute saying that some of its citizens have consented to a search. Here that search is a blood draw, but there's no reason that similar statutes couldn't be enacted to authorize all manner of other searches. For example, a State could declare that driving on its roads constitutes consent to the installation of a GPS tracking device on a person's vehicle, or consent to an officer scrolling through a person's cell phone if they happen to be stopped. Now, this Court has never approved a search on the theory that a search, that consent can be deemed by operation of law. And that's because under Schneckloth, consent is a question of fact. Roberts. It doesn't strike me immediately as that horrendous to allow officers to look, not through the cell phone, but to sort of calls, find out was this person calling somebody or talking to somebody at the time they, you know, ran over somebody else. Is that, is that so obviously? I don't know that it's... Is that so clearly something that they couldn't do? Well, I don't know that it's a more, that it's an equally intrusive search, I suppose, to a blood draw. Yeah. What I'm trying to express is that once we accept that the simple existence of a statute  if a police officer comes to my house and says, hey, I'd like to come in and look around, do you mind? And I say, yes. It doesn't matter if he has any suspicion. So these are the kinds of situations that we find ourselves in if we permit that a statute can bring about consent. How would it be if the statute simply said, if you don't consent, let's say we now have a conscious driver. If you don't consent, then we will immediately revoke your license, and when we try you for driving under the influence, we can tell the jury that you refuse consent to a blood test. Would that statute, that statute wouldn't have a Fourth Amendment problem, would it? Under Birchfield, no. That's the holding of Birchfield, that the States can impose that sort of condition on the decision to operate. What about the unconscious driver who couldn't hear that notice? Who is incapable of having that conversation? Is that? He's incapable of hearing what he's told. No. But in the case of the unconscious driver, could his license be revoked? The Wisconsin statute at issue here doesn't lead to that result. I don't see any constitutional problem with saying that it could be, but it's just the fact that Wisconsin statute doesn't permit that in this circumstance. The legislature could certainly remedy that. Now, regarding consent, this Court said in Schneckloth that the capacity for a conscious choice is the bare minimum for voluntary consent. Given that we're talking about someone who is unconscious, that's a good enough reason for this Court to reject the State's consent theory. Sotomayor We let people give advanced consent on any number of issues, including DNR, do not resuscitate consent forms, and generally they come into effect when you're not in a position to revoke. Why isn't this comparable? I mean, that's certainly true, Justice Sotomayor. It's not comparable because in this instance, the State has never argued that Mr. Mitchell or that any other person who operates on Wisconsin roads has made that choice. In the case of a DNR, a person, you know, sits down and makes a decision. Here, there's no indication that any decision like that was made to permit the search. Do you think Wisconsin could do that? I suppose at the time you went in to get your driver's license, you had to sign something, and it said, I'm agreeing that if I'm ever found unconscious, you know, I'm giving my consent now. Yes. I think that's a harder question. It's, once we have knowledge and some course of action that has been deemed to trigger a search, then it starts to look more like what we commonsensically would think of as consent. You know, you knew this was going to happen if you did this. You did this. The problem with that analysis, though, is that, again, it opens the world up in terms of what the State can, the conditions that the State can put on different activities. And I think that's why this Court, when it's been invited to call sort of notice and then action regime's consent, has declined, declined the request to do so. In the probation cases, both of those parolees or probationers had actually signed documents saying, I consent to this search, sometime before the search has occurred. And in both cases, the government asked the Court to say, well, hey, they consented. But the Court didn't do so. It decided those on the basis of a very limited expectation of probation. Again, it's, you know, ignorance of the law is no excuse. And if the law says, if you're going to operate a motor vehicle on our highways, you, you impliedly consent to this. And so people are supposed to know the law, so they know if they drive that they are, will be deemed to have consented. Why, why do you need to have them actually sign a piece of paper, as I guess some States do, but? Sure. The maximum ignorance of the law is no defense is really another way of saying that we typically, in criminal statutes, don't make knowledge of illegality an element of the crime. Criminal statutes, of course, of course, define crimes, and they do so by operation of law. That's a very different thing from saying that a, the existence of a statute can, by, by means of legal presumption, bring about the factual situation of consent in the individual. Well, these laws have been labeled implied consent law, but, implied consent laws.  And maybe what they're really about is attaching a condition to the privilege of driving. So the State says, you want to drive. This is a very dangerous activity. It causes thousands and thousands of deaths and serious injuries every year. And if you want to engage in this activity, you have to bear certain consequences that are very closely related, reasonably related to, to traffic safety. Now, if it's analyzed that way, what would be wrong with that? I agree with you, Justice Alito, that that is a more sensible way doctrinally to look at this than as consent. What would be wrong with it, some of the things that this Court said in Birchfield first, and Birchfield, of course, was applying the exigency exception rather than a reasonable condition. But the analysis is essentially the same. It's a balancing of privacy interest versus government interest in the search. And as in Birchfield, the State has perfectly adequate means, other than a warrantless blood draw, to vindicate its interest in, in catching and punishing drunk drivers. First, of course, there is the availability of the warrant, which this Court has repeatedly recognized. Warrants are increasingly available and available in a timely way in a lot of these cases. And second of all, if for some reason they are not available in a particular case, we have resort to, to the exigency exception. So the case is, the State has pointed to no situation, whether it be a real case that actually happened or a hypothetical, in which this regime of get a warrant if you can, and if you can't, you don't have to, is insufficient to vindicate its interest in getting a warrant. Well, it's very, it's easy to say, well, you can always get a warrant, and at 2 o'clock on Christmas morning, you can find, you know, every State can find a prosecutor and wake up some judge to, to grant the warrant. And, you know, maybe that's true everywhere. Maybe it's not true everywhere. In the case, in a case like the case of your client, what purpose is really served by that, where they come upon somebody who is, has not been in an accident, and there's no other plausible explanation for his condition other than having taken a, other than having drunk and, or taken drugs? What, what accounts for that? I mean, what, what, what purpose really is served by this warrant requirement? And in the case of, of the case of somebody who's involved in a very serious accident and is unconscious, how is a magistrate on the phone supposed to be able to distinguish between the possibility that this person is unconscious as a result of the accident or the possibility that the person's unconscious as a result of, of imbibing alcohol or drugs? To, to respond to the first part of your question, Justice Alito, of course, the two elements typically of drunk driving are, are drunkenness and driving. And in, in this case, the, the question was whether Mr. Mitchell had driven. I mean, it was fairly apparent that he was intoxicated. So that is a, that, and that's one situation in which you may well get different, various factual scenarios in which we have very good evidence that the person has been driving, such as that they're discovered, you know, passed out in the driver's seat, or we may have them some distance from their vehicle and we're not sure whether they've driven. And that's exactly the kind of decision that, you know, the officer could say, well, I have an eyewitness who puts him in the driver's seat. That would be a very different case than, eh, I think, you know, his car is nearby and he's drunk, so I think he was driving. And that's exactly the kind of decision that the Constitution reserves for the neutral magistrate. Speaking more generally, taking a step back to the, I guess, the second part of your question, in these circumstances of an unconscious driver, first of all, officers can't perform a lot of the standard field sobriety tests, which in Birchfield, the opinion discussed, hey, these are, the basis of probable cause is going to be sort of these subjective observations.  Again, I think with an unconscious motorist, you have a greater amount of factual variability. It could be that someone was in a crash and you might have great evidence of intoxication. They might have an open bottle of vodka next to them. You might have a faint smell of alcohol. You might have no evidence of intoxication at all. So, again, the fact that probable cause might vary, as the 18 states amicus points out, or might be hard to establish, isn't a reason for a warrant exception. It's a reason to apply the warrant requirement. If somebody's there lying down, he's unconscious, smells a little of alcohol perhaps, but wouldn't a policeman take him to the hospital? Wouldn't that be the first thing that he'd think of? Yes, I would certainly hope so. All right. So if he takes him to the hospital, they're going to do various tests on him. So what's the policeman supposed to do? He doesn't know about the varying degrees and whether it's this or that or a sniff here or a bottle there. He just thinks he's an unconscious person. So he takes him in. Now what? What's supposed to happen, then, in your view? And when? If the officer believes that there might be evidence of a crime in his blood, is that the hypothetical? No, I'm just taking your case.  And in your opinion, what's supposed to happen? In that opinion, I mean, if there's a medical emergency that an officer comes upon, of course they should take him to the hospital. No, isn't that always going to be true? I mean, or almost always. He's lying here unconscious. Yes. Take him to the hospital. And now the question would be, well, will the hospital do a blood test on him? Normally they do, probably. I would agree with that. All right. So what's the policeman supposed to do by way of calling a magistrate? I mean, what's he supposed to do? What I worry about, people — the opposite of your side, it seems to me, is people will get mixed up. So you have to tell them fairly clearly what they're supposed to do, particularly the officers. So I'd like you to say what they're supposed to do. The warrant requirement in the Fourth Amendment typically requires officers to make these sorts of judgments about — No, I didn't ask that question. I want you to tell me, who is pretending to be an officer, what am I supposed to do when I get to a car and there's someone there lying unconscious? Other people may or may not be hurt. I have to say that very often in my experience, this is a result of drunk driving. I look around. I don't see any other cause. What am I supposed to do? Well, certainly you're supposed to get the person to the hospital. Of course. It's not our position that you shouldn't. No, of course. Now what? Well, if you have evidence of a — No, no, no. Don't say if. I just put the case, because I want you to tell me what I'm supposed to do. If there's no — You can make up whatever you want as situations, but just tell me, as if I were this officer who wants to know. If there's no indication that a crime has been committed, then there would be no justification for a search. Well, we have a guy lying on the ground. He's — now, what do I have to have? I would think you would have to have some reason to think that that was due to intoxication. Some reason. It's intoxicated driving. Okay. Now, so I add, it's a whiskey bottle. Now what? That seems like a much clearer case of — No, I didn't. Now, okay, there's a whiskey bottle. Now, what am I supposed to do? You're supposed to call — well, you're supposed to arrange, first of all, for medical care. Yeah. And if, again, you believe that there's probable cause, you're supposed to call up the magistrate and say, I have probable cause to believe this person is intoxicated. So you bring him to the hospital. Correct. The intern or the emergency room says, we better take care of him. We're going to take a blood test. So they often do. I agree. What does the officer say? Again, I think if the officer wants access to that blood as evidence, then he needs to either get a warrant or — Does he say to the intern, don't do it until I can find the magistrate? No. There's no reason that there can't be more than one blood draw. It doesn't have to interfere with medical care. And, in fact, it probably shouldn't. If, in fact, medical care is keeping the officer from pursuing a warrant, that's a textbook case of exigency. I was going to ask your adversary this, but maybe you know the answer. I know HIPAA does not provide for the release of that information to law enforcement. Does HIPAA also prevent the subpoena? Yes, Justice Sotomayor. Actually, I mean, really, the question is — those questions are — or the answer is those questions are sort of percolating up through the courts now. In general, the cases that I've seen — and I can't cite them, but they — you know, there have been instances in which a prosecutor, sometime after the fact, wants to subpoena the blood from the hospital or the results of the blood test. And I think that the correct rule that I've seen in some cases is, yes, if you can get judicial approval of that. But a person generally does, as you point out with HIPAA, has an expectation of privacy. Even if they're sharing information with a hospital, that doesn't mean that they are sharing it with the whole world, including law enforcement. But it doesn't mean necessarily that the courts are precluded from subpoenaing that information. Well, no, certainly. Certainly. But again, there is — So let's go back to the hypothetical so I understand your position. Someone's sitting after an accident unconscious. There's no smell of alcohol. There's no open bottle. There's nothing else to suggest alcoholism. The first thing you do is you call and you go to the hospital. Doctors say to you, it's going to take three hours for the blood test to come back. Would exigent circumstances, because we'd suggested as such in Birchfield, in that situation, would exigent circumstances be different for you saying, well, draw the blood because we need to preserve the evidence? Or — and why wouldn't that hold true if the officer knows it's because of alcohol? Here they were told he was drinking. He admitted he was drinking. They waited an hour and took him to the station. Didn't do a breathalyzer. Maybe they couldn't. I don't know. But only took him to the hospital after he was unconscious. Is that — why is that a difference? If I understand the hypothetical, what you're proposing would be an obstacle to them getting a warrant in time. And that, again, is essentially the definition of exigency. That would be the first hypothetical. He's unconscious. They don't know why. His blood can dissipate. And he can say, it'll take three hours. Yes, that would be, I believe, an exigent circumstance. So how — but why is that different than here where, yes, they waited an hour and plus. They talked to him. They put him in a cell. And he went unconscious. What's the factual and legal difference between the two things? The legal difference is that exigency, as it was described in McNeely, involves some obstacle to getting a warrant or something that would make timely getting a warrant impractical. They knew they needed the warrant when they arrested him. If they needed the evidence, then they didn't have to wait an hour to try to get it. Well, and there's just no indication that there was ever a thought of a warrant. I mean, there's no indication whatsoever that there was any impediment to them getting a warrant. Well, that's the — I mean, this discussion has highlighted, I think, the reason you have these laws. I mean, it's varying fact patterns with respect to probable cause, varying fact patterns with respect to exigencies, and the whole point is you don't want to have to go through all that when it makes sense, according to your friends on the other side, to say, look, here's — here's a — this is a right. It's not a right. It's a privilege to drive on our roads. It's a very dangerous thing. If you're going to do it, you have to allow us to, you know, check your blood alcohol levels if you're in an accident. You have to agree to that. I mean, that's the whole point. It's to avoid all these — these issues at a time when exigency is certainly a common aspect given dissipation of alcohol in blood. So again, I guess, let's — maybe I'll go back. Did I understand your answer about actual consent? In other words, you go down to the DMV. When they take your, you know, your driver's test, they say, here's a form. We need you to sign this. And the form is, I consent to have my blood drawn. That's actual consent. Is there anything wrong with that? Yes, there's something wrong with it. I mean, because under Schneckloth, we analyze consent under the totality of the circumstances. One factor isn't determinative. I agree, Your Honor, that if we have that initial agreement, it starts — that's certainly a heavy factor in the Schneckloth balance. So what would count what's on the other side? I mean, certainly the elapse of time. I mean, a person could — So if he signed it two years ago, it doesn't count anymore? I'm willing — I will allow that, again, that those hypotheticals look a lot more like consent than what happened here. But does that mean it's okay? I don't think it's okay, but you don't have to agree with me to — Well, no, but I do have to have a reason you don't think it's okay. Because, again, when the State conditions, you know, participation in some activity on your consent to give up some part of your Fourth Amendment rights, it becomes very difficult to see where the limit to that is. Yeah, but this is not — I understand your argument, who knows where this will stop, but I guess the answer is it will stop with, you know, a license to drive on the roads. Just because they do this, which has been a very commonplace practice, it doesn't mean that they're going to say, you know, walking on our sidewalks is a privilege, and if you do that, we're going to imply that you consent to be, you know, searched whenever we want to. I mean, that parade of horribles doesn't seem to me to be that persuasive. The — the problem with — again, the problem with using consent as the way to analyze this is that consent doesn't take into account whether the conditions are reasonable or not. And for all the — Well, the only conditions — I mean, believe it or not, the only conditions you need to know about are the ones that I gave you. You're perfectly compus mentis. You're taking your driver's test. It goes out, and the person says, here, read this carefully. And sign it if you want. If you don't want to sign it, I guess we don't have to give you a license. What more circumstances do you need to know? I agree with Your Honor. In that circumstance, it's very likely that the Schnecklaus test would be met. But that's not the circumstance that we have here, as I'm sure you're aware. Don't you have an unconstitutional conditions argument? Yes. I think there would be an argument of unconstitutional conditions. But don't you have an argument that the State can't extract a condition that's more invasive than reasonably necessary for its needs? I think those — A blood draw is different than — than searching somebody's home. I — Intrusive as searching someone's home is, invading someone's body is a different level of intrusion. I agree with you, and that's why I think it's — You've come up with some good arguments there. But — But I guess I would say, in terms of the unconstitutional conditions thing, it's pretty well established, I think, uniformly, that driving on the roads is considered a privilege and not a right to which certain conditions can — can attach. And so, again, you — I — Go ahead. If I may, I agree with Your Honor that conditions can be attached to — to operating on the roads. And I would also say that this Court in Birchfield established the outer limit of what conditions can be attached when it said that criminal penalties that were associated with refusing a test would be unconstitutional because they're unreasonable conditions. The position of the State takes that quite a bit further and says, we're not going to charge you with a crime for refusing. We simply aren't going to give you the opportunity. Well, let me go back for a second, if I can. I was conceding to you — there are dozens of good legal arguments. The law in this area is filled with complication. And so that's why I wanted to focus on a simple thing I thought, the policeman. And I don't see why you — perhaps you'd want to tell the policeman this. Officer, if you see somebody unconscious in the car or not, get him to the hospital. Okay? And if they're going to take a blood test, which they probably will be, fine. Let them. Of course. But if you want to use that result in your case — now, that's the question. Yeah, you can. And why? Because otherwise, what you're going to have to do, you get to the hospital, he's taking the blood test, you phone up a magistrate, you say he's there under a blood test anyway. You go through a certain amount of — there's a whiskey bottle nearby and so forth. The magistrate says yes or no. He's going to have that blood test. I mean, so what? The simplest thing? Policeman, if they take him to the hospital, which you should do, and they give him a blood test, you can use it. That's a reasonable thing to do. All right, now, what is your answer to that? Not in terms of this law over here, that law over there. Whether it's reasonable simply to say that police can always use the blood. Yeah, if they take the test, if he goes to the hospital. If a nurse or a doctor draws the blood for medical reasons, I understand. If I may answer the question. The difference is that when the hospital is performing a blood draw on a person, it's for their benefit. It's — we have actually a related but distinct concept called implied consent in the medical setting. Because we imagine that everyone who was in this circumstance would want medical treatment. And so if they were capable of agreeing to it, they would. We don't have that same presumption when it comes to blood draws. People are not presumed to consent to things. Thank you, counsel. Ms. Scherz? Thank you. Mr. Chief Justice, and may it please the Court, the fundamental question is reasonableness. Every state holds drivers to a bargain to comply with testing should police have probable cause of intoxicated driving. Wisconsin, like over half the states in the country, reasonably recognizes that a driver should not evade that bargain by becoming the most dangerous of intoxicated drivers. An unconscious driver has made all the choices that put others' lives at risk, but then, through no fault of the government, has put himself in a position where he cannot make further choices. As medical care for him must be a priority, and as that medical care will almost invariably involve a draw of his blood to test for intoxicants, a warrant offers him only slight protection but guarantees law enforcement distraction during a criminal time or critical time. No, no, he's just, take him to the hospital. See, his last answer, I thought, was pretty good. He said, take him to the hospital. Have the blood test. Okay. But if you want to use it in evidence, call up the magistrate and say, Magistrate, I want to use this in evidence. I want to, is that okay? And by doing that, you're not really interfering with the medical treatment. You're, all you're doing is asking him to make another phone call. What's, what's, is there anything wrong with that answer? There are potential problems with that, and we see that playing out. So once we've, once he's at the hospital, if law enforcement, excuse me, medical staff will want to draw his blood quickly, because that's how they're determining how to treat him. And so if, at that point, law enforcement can say, instead of drawing X amount of blood, please draw a little bit more blood to be used for law enforcement purposes, then we're talking about one blood draw all at that time. If, instead, a law enforcement officer has to get on the phone and call the magistrate, even if it's not a tremendously significant delay in terms of time, what's happening is then interim medical care may be offered. There could be medication that's given. Medical staff may be wanting to provide other treatment, such that then once that warrant is obtained, the person may, may not be in a position where a second blood draw could happen. And then, at that point, as my friend acknowledged, we're potentially talking about two needles instead of one. And even if we can obtain a sample at that time, if law enforcement can, they're put, then, in the difficult position at times of having to try to interject themselves into additional medical care that's being provided. Kagan, if I could, just to understand your argument. I mean, usually, you're exactly right that reasonableness is the core of the Fourth Amendment, but usually we say, well, what's reasonable is you get a warrant or you fall under one of the established, well-acknowledged, well-understood historic exceptions to the warrant. Which exception are you saying we fall under, or are you saying that it kind of doesn't matter, we can do the reasonableness inquiry freestyle? So this Court could decide it under one of two theories, either consent or as a condition of driving, which would fall under a general reasonableness balancing test. And ultimately, under either of those theories, it's going to come back to reasonableness, because as this Court acknowledged in Birchfield, reasonableness sets the boundaries of this type of implied consent scheme. Kagan, well, start with the consent. Do you think that there is actual consent here? Yes, it's a special application of consent, but it still is consent. How is it consent? Because the person has, through his voluntary actions, demonstrated his agreement with these conditions. And so when we look at consent and the Schneckloth consent, what we're ultimately talking about is a voluntary decision, meaning not coerced by the government, and there doesn't have to be a knowing waiver. And so here, both of those things are met. His actions of driving, with probable cause then for police to believe he was driving while intoxicated, are voluntary actions that he's taken. We know that this has to work and move a little differently, because in most consent scenarios, we wouldn't be able to impose civil penalties for someone's decision to say no. And we also know that in most consent scenarios, someone being intoxicated would weigh against, potentially, a finding of voluntary consent. But that's all we're dealing with here. I guess this isn't consent in you said it a little bit differently, but it wouldn't seem as though this is consent in the normal way, where it's like I understand the choice I'm making, I agree to that choice. There's nothing to say that Mr. Mitchell or anybody in his position understood this choice he was making, right? I mean, if he had signed something at the DMV, you might have an argument. Look, there's the manifestation of consent, his signature on a page saying that he agreed to a blood test. But there's nothing like that here, is there? No, there's not. I would note that Wisconsin does have a statute that demands that as part of the knowledge test for obtaining driver's licenses, there are questions related to our applied consent laws in intoxicated driving, but we don't have any specific requirement when signing for the driver's license. But to go to your point, it is, it's an atypical type of consent because it has to be, because we are only and exclusively dealing with intoxicated people. So the normal, what I would call the typical, at the scene consent that you might expect in other circumstances, simply can't work in this context because we are only dealing with intoxicated people. And so it makes sense to evaluate his actions while he's driving because that's when he's making all of the decisions that are putting other people's lives at risk. Now, the problem that I have with this implied consent is I take the road. I should know the law. I'm guilty of violating the law if I drive intoxicated, whether with alcohol or drugs. All right? So that amount of knowledge is self-evident and everyone should know it and they can't plead ignorance of the law. Right. This is not quite ignorance of the law. This is something substantially different because you're talking about not ignorance of the law, but knowledge that your body can be invaded by the police to secure evidence to prove you drove intoxicated. And we go back to the presumption that Justice Kagan spoke about, which is a presumption that you're going to have a warrant if you think I've committed a crime before you can invade my privacy. You have well-defined exceptions, exigent circumstances. You say there were none here. You've stipulated to that. And now you're talking about implied consent. That's really not consent in my mind. If I don't think it's consent, what are you left with? If you don't believe it's consent, it's still a reasonable condition of driving. But we've always said that reasonable, how can it be reasonable when you don't know that that invasion is necessarily part of the law? You know that not driving intoxicated should be part of the law if it's not a crime and everybody understands that. But why would you know that invading your blood is? Well, I think it's reasonable to expect, given that every State in the country has had implied consent laws for decades, which are specifically designed to test for evidence of intoxication, I think it's reasonable to expect. But it's a fiction, isn't it? It's not consent, no matter how much you call it implied or presumed. And it's typical of the original non-resident motor vehicle statutes. They said, if you drive on our roads, then you will be deemed to have consented to appoint the Secretary of State as your agent. In time, we came to appreciate that that is not genuine. It doesn't mean that you can't say you drive on our roads, you have to answer for any damages that you've caused, but we don't use this presumed consent anymore, because it is a fiction. It's the legislature that's consented to have this thing happen. It's not the person who is arrested. And so if this Court wishes to look at it not through consent, but as a condition of driving, it's still a reasonable condition. And as to your question, Justice Sotomayor, why would this person expect it? For the unconscious driver in particular, he has every reasonable expectation that he will be facing bodily intrusion to test for evidence of intoxication. So he, more than other intoxicated drivers, has put himself in a position where the reasonable expectation is he will be taken to a hospital and there will be testing of blood. He'll understand- I'm not sure he expects much of anything at that stage. But I just have kind of a fundamental state law question for you. We've been proceeding on the assumption that the state law operates to create implied consent or it's a condition of driving. But has actually a majority of your Supreme Court ever so held? As I understand it, there were three justices who held that that is indeed how the law works, as you're arguing. But only three justices. And two others proceeded on exigency and treated it on that basis. And a number of justices have suggested that it isn't an implied consent statute at all, but proceeds as a number of other states do to say, well, consent or no consent. If you fail to comply, there are collateral consequences. You may lose your license. So we've been proceeding on an assumption here that I just wonder how sound that presumption is about the nature of state law. So can you advise us on that? Your Honor is correct that it was a three-justice plurality in this case that upheld this search under consent grounds. The two other justices, just as one point of clarification, recognized it as a valid search incident to arrest. I'm sorry, I misspoke. Search incident to arrest rather than exigency. But you take my point. We don't yet, I believe, have a majority holding from your court as to the nature of this statute for purposes of state law. So how are we to assess it as a matter of US constitutional law? Well, I think Your Honor and this Court may still recognize it reasonably under the Fourth Amendment as a form of consent, or if this Court doesn't wish to do that, as a reasonable condition of driving. But we normally take state law as it's given to us. We are not great interpreters of state law. We may think we're pretty good at a lot of things, but we're not the last word on state law, and we normally defer to state authorities on that, or we're supposed to, and then assess how it proceeds under the federal constitution. If we're not sure what the state law is here, what are we supposed to do? Well, I would say that a majority of our court has recognized that a blood draw from an unconscious person is a reasonable search. And at the Wisconsin Supreme Court, there was discussion of both consent and search incident to arrest, as I mentioned. But I think there is sufficient ground here for this Court to affirm it as reasonable. Though if this Court should disagree and say that in some way the Wisconsin Supreme Court hasn't provided that clarity, this Court would – could remand for further clarity, but I think we have that here. How do we remand for – I mean, you know, there's certification law, which is, I don't say usually, but often doesn't quite work out the way you hope. But we already – I mean, they would just give us another 3-2 opinion. And this was the second case from the Wisconsin Supreme Court where that happened, and so we're certainly asking for this Court's – I mean, I'm not faulting them for that. It happens. But it doesn't seem that it would help us with our particular conundrum. We would agree, and we agree that there – or we assert that there is enough here for this Court to decide based on the Wisconsin Supreme Court's rationale. Is there any doubt about what the Wisconsin law does? There's disagreement on the State Supreme Court about the – the theoretical basis for the decision in this case. But is there any doubt that Wisconsin law says that if you drive on our roads and a police officer has probable cause to believe that you were driving under the influence and you are unconscious, that the police – that the police may, without obtaining a warrant, get a blood sample from you? There is no doubt of that. The main rule, I think you would recognize, is that if you're going to seize blood or anything else from a person, you should get a warrant, with exceptions. One thing that we take into account is how difficult is it to get a warrant. And in this case, we were told that in Wisconsin, magistrates are available around the clock by phone or by e-mail, and often it's only – it takes only 15 minutes. Is that the case? So it varies from county to county across Wisconsin. I would say on the fastest end, you're looking at 15 minutes, so sometimes it's half an hour, 45 minutes to an hour. At this point, my understanding is that most counties in Wisconsin are using a variation of telephonic warrants, though that still requires that if a law enforcement officer and the judge do not have duplicate – if the judge does not have a duplicate copy of the warrant in front of him or her, the officer will have to read the warrant verbatim to the judge. Does every county in Wisconsin have a judge who's on duty 24-7 for these purposes, or at least on call 24-7? I don't know for sure with every county, but I think the common – the common practice is to have an on-call judge. But what – an important issue – I'm sorry. It seems to me that why did the officer wait to take him to the precinct? Meaning, he didn't black out for an hour. If he thought that getting proof of this crime was critical, why wasn't he calling for a warrant as he was driving to the precinct, or why didn't he go straight to the hospital? I'm a little bit confused as to what was in their mind. I think what was in their mind is, we either get consent, and if we don't, they're going to suspend his license anyway, and it's only convenient for me now that I have to take him to the hospital to take the blood draw. So the officer in this case first took him to the police station because he wanted to first offer the lesser intrusive breath test. So he took him there to do a breath test, but then it was at the police station that Mr. Mitchell's condition really began to deteriorate. He was having a hard time keeping his eyes open and head up. So it was at that point that then the officer, recognizing that, said, nope, we've got to get him to the hospital. It's an 8-minute drive to the hospital. And that's where, then, the blood draw ultimately happened. And so one of the things, I think, that's important to keep in mind here is that law enforcement officers with an unconscious person are going to be confronted with at least one person who needs urgent medical care. And so we believe it's important that law enforcement have clarity of a rule that says that they may be able to focus on getting that person that medical care. And then, again, once the person is at the hospital, almost invariably, this testing will happen anyway. So the warrant for the unconscious intoxicated driver is offering little meaningful protection, but is then going to take away from law enforcement resources and, as I mentioned, could potentially jeopardize, then, the legal blood once it's drawn. So that maybe answers the question I had, which is what are the practical problems with getting a warrant? And maybe you just said that delaying medical care while you're getting a warrant, is that what you're saying? Because you're not transporting the person right away, or at least just, can you spell out, maybe I'll just ask it generally, what are the practical problems, in your view, with getting a warrant in this class of cases? Sure. So if law enforcement has to be distracted at the scene, and figuring out whether you can get a warrant is already something that's going to take some time, and so for law enforcement, if they have to contemplate that, it's potentially taking away time and resources from making sure that person gets medical care, if there's a crash that's happened, tending to the scene of the crash, and then once we're at the hospital. In some of these situations, I assume it'll be a single officer? Some of these situations, it will be a single officer, and so that officer's attention should be able to be undivided on ensuring that that person gets the care that she needs, and then once we're at the hospital, a delay between the medical draw of the blood and the legal draw of the blood can potentially jeopardize the results if there's interim medication that's been offered, or if then, once the warrant is obtained, the person is receiving other medical care that would prohibit a second blood draw from happening. And so given that, again, this person is in all likelihood going to be experiencing the intrusion of a blood draw, requiring law enforcement in those circumstances to obtain a warrant is not really offering him the protection against the intrusion. Our statute has a probable cause requirement built into it, so he can always challenge probable cause, and again, the statute also limits the scope, right? So this can only be testing done for evidence of intoxication. It has to be done by a medical professional. And I assume most of these cases, or at least many, are cases where there's been an accident. Yes, you're correct. One of the other things Do we have any sense of the numbers in Wisconsin on that? I don't have the numbers of the breakdown of car crash versus other circumstances. My understanding, anecdotally, is that most of these are car crash cases. And one of the other things that we're seeing is a dramatic rise in the instances of drugged driving. So particularly with regard to opiates, an unconsciousness is a direct effect of excessive opiate usage. For example, according to the Governor Highway Safety Association's 2016 report, 16 percent of fatally injured intoxicated drivers tested positive for opiates. And so we're seeing those numbers go up. And in fact, heroin and other drugs, they actually dissipate faster from the bloodstream than alcohol. And so given that increase, particularly with the unconscious person, and given that, as my friend noted, the unconscious It sounds like an exigent circumstance argument, which you stipulated against in seeking So there may, in many of these cases, be exigent circumstances. But the question should not just simply be one of time. Because as this Court recognized in Kentucky v. King, there's nowhere in the Constitution that says that the minute police have probable cause, they need to drop everything and get a warrant. And that should be particularly true where we know law enforcement is going to be confronted with someone who needs urgent medical attention. And again, he hasn't withdrawn his implied consent. So law enforcement has every reason to believe that he is continuing to agree. Sotomayor Why do you – the problem I'm having with your argument is I don't know where you get the implied consent from. I assume there's none. If there is none, for the reasons we've discussed, then you are back to exigent circumstances or some other recognized exception. You say incident to arrest. That's a close call, given the language in Birchfield. What's left for you? General reasonableness in the same way that this Court has applied it in Maryland v. King and another number of others. Well, what Maryland v. King said was that an alcohol swab of your mouth, for purposes of identification, not for purposes of proof at trial, but for purposes of identification, was not sufficiently intrusive to require a warrant. That's what Maryland v. King said. But Birchfield said the intrusion into a body is something else. Well, even in Birchfield, this Court said that where there's been no clarity from the founding, it looks to reasonableness, and this Court looks to reasonableness. And again, we're back to the balancing of the government's interests and the individual's privacy interests. And for the unconscious intoxicated driver, we have, even more so than for other intoxicated drivers, a compelling interest in obtaining that evidence. This will be the blood evidence will be the only way to definitively prove his intoxication one way or another. We know it's more compelling because we have the need for law enforcement to be able to focus on matters other than obtaining a warrant, i.e., his care. And the individual has placed himself in a position where he has a lesser expectation of privacy against this precise type of intrusion. He had a card on his windshield that says, if I'm unconscious, I do not consent to a blood draw. That could very well make a difference, because if we're thinking about it through the lens of what I'll call typical consent, if an officer objectively perceives a withdrawal of that consent, then the State may no longer proceed under his under the theory of that he's offered consent. He may always withdraw it. Roberts. Well, there may not be consent, but you'd have pretty good evidence, wouldn't you? I mean, you have a card saying he's anticipating being unconscious while he's driving. Well, that would certainly be helpful. That would certainly be helpful. But so, again, Your Honor, Justice Ginsburg gets to an important point here, that even with the unconscious person, it's still a presumption. Unconsciousness with an intoxicated person is not a static state. Right? This is one person. His condition may change. And so if prior to his blood being taken, he explains, I do not want a blood draw taken, then we may no longer proceed under his implied consent. If he regains consciousness prior to the blood draw being taken and says, I do not want consent, then we may no longer proceed under his implied consent. Well, that's the – I mean, that's actually the question presented, is how to deal with an unconscious person. To what extent do you think the ability to withdraw the consent that was given – I mean, you call it implied consent. I'm not quite – I don't quite understand why it's not consent if it's a condition upon driving the automobile. So if you have that, the validity of that, to what extent does it depend on the ability to withdraw? Because that's the problem here, of course, is the unconscious person can't withdraw at the moment. So that exchange that Wisconsin, like most states, has with the conscious driver, where we read what I'll call the pretest advisement, is not in any way a request for consent. The person has already consented. What it is is an explanation that this testing is about to happen, and we explain to the conscious driver, because we realize when he hears that this test is about to happen, he may not like it and he may withdraw his implied consent, we therefore further explain the ramifications that will follow if he withdraws it, again, to incentivize the consent. So that exchange is not in any way constitutionally mandated, and it doesn't in any way apply to the unconscious driver. What that is designed to do is prevent confrontational encounters with law enforcement, because, again, we're dealing with intoxicated people. And so perhaps a helpful analogy is thinking about a TSA agent at an airport, right? The person has gone through security. They've gone through the body scanner. And now the agent has seen something that warrants a pat-down. The agent is not just going to walk up to that person and start touching him or her without saying anything, right? They're going to say the agent will say something to the effect of, I'm about to pat you down, okay? Well, that's not a request for consent. What that is is this is a human exchange where one is about to effectuate a bodily search on the other. That is what the pretest advisement that is read to the conscious driver is. It doesn't apply to the unconscious driver because we don't have that concern of the confrontation, and he's already demonstrated his implied consent. I guess what you just said suggests the limits of these laws. You know, in general, these laws work fine. And the reason that they work fine are because most drivers are conscious, and so the police officer engages with them. And what the law does is it functions not as implied consent. It functions as induced consent or incentivized consent. The police officer comes up and says, unless you consent, your license is going to be taken away. And then the person has a choice, right? Okay, I'll consent, or no, take my license away. And that's the way these laws usually work. And we can understand how consent is, how the law is inducing the consent and the person is giving the consent. But that just falls apart in this situation of the unconscious driver where we can't possibly get to any real notion of consent. So two parts in response. I think it's important here that the government has not put the person in that situation, right? If that opportunity, if there is an opportunity that's offered to the conscious driver, the unconscious driver's lack of having that opportunity is his fault, not the government's. And then what I would say as a second response is, again, consent ---- Kagan The Fourth Amendment often applies against people who violate the law. And we don't usually say, tough luck, it's your fault. You're a criminal. Sullivan True enough. But in the consent world, this Court has also recognized that we, the government doesn't have to provide a person an opportunity to withdraw consent. So this Court's discussion of the facts of Illinois v. Rodriguez and Georgia v. Randolph, when we're talking about an apparent co-tenant at the door and another co-tenant who's asleep, this Court said, well, the government doesn't have to go rouse that person to give him an opportunity to withdraw his consent. And the other thing I would note in response to your question is that, again, this has to work a little bit unusually because we're dealing with intoxicated people. So the danger of putting everything on that at-the-scene encounter and exchange is that it's never going to be the product of the sober mind. And so that's what's so important of having the clarity up front for law enforcement and the individual of how ---- Roberts Let's finish your sentence. Sullivan Thank you. Of how that consent will be demonstrated and the expectations that person will be held to. Thank you. Roberts Thank you, counsel. Mr. Hinkle, you have four minutes remaining. Hinkle Thank you. This Court has repeatedly recognized that a blood draw is a significant interest that affects ---- sorry, offends an individual's sense of dignity and bodily integrity. And ordinarily, this is true whether or not the person is conscious. Again, against this significant intrusion, the State offers no interest that is not adequately served by either a warrant or the exigent circumstances doctrine. And again, a warrant is the presumption of the Fourth Amendment, and this Court has certainly made exceptions to that. But it's been in cases where the State could show, first, the need for a search, which we concede certainly there is here. But second, some reason why the ordinary regime of a warrant or a warrant exception isn't sufficient to vindicate their interest. And that's just not present here. Alito Didn't we just hear some reasons why the warrant would ---- the warrant requirement would create problems? I'd like to hear your response to that. If there's a crash, the need to attend to people who may be injured in the crash, the need to attend to the medical needs of the person who is unconscious. Once at the hospital, the potential that medical care may interfere with the accuracy of a subsequent blood draw, the possibility that if the medical treatment proceeds at the hospital before a warrant, before the blood draw for the presence of drugs or alcohol can be administered, it may not be possible to do it because of the care that the person is being given, maybe the person is in surgery. What is your answer to all of that? Those are all textbook factors that would go toward the exigency analysis. They might be present in many cases. It may be that in many cases the exigency, the answer to the question, is this an exigent circumstance justifying the absence of a warrant, is yes. But that, again, is not a reason for a categorical exception, because that's not every case. That is the case ---- Isn't it most? Why not have a categorical exigency for this category of cases involving unconscious because the factors in many cases are going to be such as were described? Well, I don't think we have any evidence that that is in fact the case, that that is most cases. You know, police departments all across the country are different. There are ---- and accidents are different and situations of arrests are different. I mean, certainly the state is making a lot of assertions about how these things tend to go, but we just don't have any of that in the record and just no indication that that is typically the case. Well, what's on the other side of the balance, where you have somebody who's is being administered and the person is in all likelihood having a blood draw for other purposes anyway? Well, the reasonableness of a search hasn't ever depended on whether or not someone was around to see it. It's no less unreasonable to search a person's house without a warrant if that person happens to be absent or if that person happens to be asleep. The problem that the Fourth Amendment seeks to protect against is the invasion of privacy. That's the same. The interest that this Court identified in Birchfield, the anxiety that comes along with knowing that the government is in possession of this information about you, that's the same, even if it happens a few minutes or a few hours later. How many state ---- I mean, in Birchfield, you say I'm going to take your license away unless you're going to agree. I mean, of course he's going to agree. So it's ridiculous. So, I mean, so you have a very little protection when he's awake. Okay? So to say he's asleep and you're going to take him to the hospital anyway, the thing that I can't get my hands on is this just seems like a sort of bureaucratic set of rules that's going to confuse people, achieving no real purpose. I disagree. Once you're into Birchfield, it's sort of goodbye. I mean, and I can't get my hands on that, which is why I repeat it. I disagree with the premise that the consequence of license revocation is going to lead to automatic consent in every case. In fact ---- No, no, you're right. Not every case, but in many it will be confusing. In a few he'll say no, but 99 percent, sure. If I may. Sure. I don't think that's true. I think there's actually ---- it's not 1 percent. It's considerably higher percent of people who refuse a blood draw regardless of that license consequence. They make that choice. Okay. Thank you, counsel. The case is submitted.